NOT FOR PUBLICATION(Docket No. 98, 104, 113)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
_____
                               :
LUIS MARCANO,                  :
                               :
           Plaintiff,          :   Civil No. 02-2666 (RBK)
      v.                       :
                               :   OPINION
ROBERT T. LOMBARDI, et al.,    :
                               :
           Defendants.         :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the court on cross-motions for summary judgment of the claims of Plaintiff Luis Marcano ("Plaintiff") for violation of due process, retaliation, conspiracy, and false disciplinary charges against Defendant Robert T. Lombardi ("Lombardi") and State Defendants Zane Maguire ("Maguire"), Gregory S. Achinko ("Achinko"), and Keith Phillips ("Phillips," collectively, "Defendants"). For the reasons set forth below, Defendants' motions for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied as moot.

**I.  Background**

The following facts are undisputed in Plaintiff and Defendants' statements of material facts. In January and February 2002, Plaintiff was an inmate in South Woods State Prison in

Bridgetown, New Jersey, serving a sentence for aggravated assault and possession of a handgun. Defendant Lombardi, an agent with the Immigration and Naturalization Service ("INS")[1] since May 2000, first interviewed Plaintiff in the prison in January 2002, after the New Jersey Department of Corrections notified the INS that they had a foreign-born inmate in custody. Lombardi claims that Plaintiff was uncooperative during the interview and falsely identified himself as a United States citizen.

After the interview, Lombardi researched Plaintiff's history and concluded that "Luis Marcano" is an alias for Pantaleon Remigio Lopez, a citizen of the Dominican Republic who had been previously deported from the United States in July 1977 after illegally entering the country in August 1975. Upon ascertaining Plaintiff's true identity, Lombardi compiled a "Record of Deportable/Inadmissible Alien" on February 8, 2002, and prepared a "Notice of Intent to Reinstate Prior Order" ("Notice of Intent") on February 12, 2002.

Lombardi returned to the prison on February 14, 2002, to advise Plaintiff of the Notice of Intent. Plaintiff was again uncooperative and covered his ears as Lombardi read the reinstatement notice to him. Lombardi advised Plaintiff that he had a right not to make a statement, and that Plaintiff's

---

[1] The INS was the precursor to the Bureau of Immigration and Customs Enforcement.

signature was not necessary for deportation. Plaintiff refused to answer Lombardi's questions. Plaintiff claims that Lombardi "threatened" him "about the fact that I had lied to federal officials and the illegal reentry into the country after have been deported, I raised both of my hands and covered my ears with my index fingers to avoid hearing Lombardi then he stopped talking." (Pl.'s Opp. at 7-8.) Aside from Plaintiff's characterization of the interviews as "threats," Plaintiff's description of the events to this point does not conflict significantly with Defendant's.

    The factual dispute, to the extent that there is one in this case, arises from the following incident: Lombardi claims that during this February interview, Plaintiff "became agitated and abusive, and stated to Lombardi that he, Marcano/Remigio, knew how to use a gun . . . [and] then formed his hand in the shape of a gun, waved it in the air and made a trigger-pulling gesture in Lombardi's direction." (Lombardi Mot. Summ. J. at 4, 5.) Lombardi considered this a threat of physical violence against him, particularly given his knowledge of Plaintiff's violent history. Plaintiff claims that he was merely "waiving my hand in an expressive manner in the air." (Pl.'s Opp. at 7.) Corrections Officer W. Brandriff saw Plaintiff with "his hands in the air and talking in a loud voice," and he removed Plaintiff from the room and told him to calm down. (Lombardi Decl. Ex. B.)

3

After the interview, Lombardi went to the office of Defendant Prison SID investigator Gregory Achinko to report the alleged threat. Lombardi filled out a "Special Investigations Division Special Report" stating:

> During the course of serving the above inmate with his immigration document, the inmate, Marcano, became verbally abusive and then stated "I know how to use a gun." I replied to him that I knew that since he was convicted of a homicide in New York that involved a gun. At that point he made a gesture with his hand, forming the shape of a gun, waiving it in the air, simulating pulling the trigger. At this point, I ended the interview. Marcano has a criminal history of making violent threats and has a Federal conviction for making threatening communications.

Lombardi also provided the prison with a copy of the Notice of Intent and an immigration detainer for Plaintiff, requesting that the INS be notified before Plaintiff's release so that the INS could assume custody and deport Plaintiff from the United States. After receiving Lombardi's report, prison officials issued Plaintiff a disciplinary charge for a threat of violence and placed Plaintiff in pre-hearing detention. Defendant Zane Maguire was the hearing officer assigned to the case.

Plaintiff requested counsel for the disciplinary hearing, and was assigned an inmate counsel substitute (a paralegal). The disciplinary hearing was adjourned to enable Plaintiff to prepare a defense and obtain answers to interrogatories from Lombardi. Plaintiff requested an opportunity to question Lombardi about the

incident, and was permitted to provide interrogatories, which were completed in a phone call by Achinko to Lombardi on February 25, 2002. In response to Plaintiff's interrogatories, Lombardi told Maguire that Plaintiff did not explicitly state that he was going to kill Lombardi, but that "he did say he knew how to use a gun, pointed his finger at me and made a trigger squeezing motion," and that he felt threatened "because I [had] his whole folder here in front of me and I know he has a history of threatening and violence." (Aff. Carlos M. Villar, Jr., Ex. D.)

Maguire found that Lombardi was very credible and determined that Plaintiff's statement and action did constitute a threat. Plaintiff was sanctioned with fifteen days detention, 240 days administrative segregation, and 240 days loss of good time credit. Plaintiff appealed this decision to the prison administrator, who affirmed both the finding and sanction. Plaintiff did not appeal to the Appellate Division of New Jersey Superior Court.

Plaintiff filed this suit on January 21, 2003, alleging that the disciplinary charges constituted a conspiracy of retaliation for his exercise of his Fifth and Sixth Amendment rights during his interview with Lombardi. He also alleges that the disciplinary hearing violated due process. Plaintiff was ultimately deported on January 7, 2004, and now conducts this suit by mail from the Dominican Republic.

**II.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331. Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**III.    Analysis**

## A. Federal Rule of Civil Procedure 17(a)

Defendants contend that Plaintiff's refusal to use his real name — or even offer his true identity — for the purposes of these court proceedings mandates dismissal under Federal Rule of Civil Procedure ("Rule") 17(a) since "Luis Marcano" is not the real party in interest, and Plaintiff deliberately and repeatedly failed to identify himself. Plaintiff does not appear to address this issue in his opposition, except to offer the names of his parents and suggest that his name is neither Pantaleon Remigio nor Luis Marcano. Plaintiff continues to refuse to disclose his true name.

Rule 10(a) requires a caption setting forth a title containing "the names of all the parties." Fed. R. Civ. P. 10(a). Pursuant to Rule 17(a), every action must "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Courts do permit parties to proceed under pseudonyms in "certain limited circumstances," particularly where a petitioning party can demonstrate "significant privacy interests." National Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1245 (10th Cir. 1989). However, "[p]roceeding under a pseudonym in federal courts is, by all accounts, 'an unusual procedure,'" Femedeer v. Haun, 227 F.3d 1244, 1246 (10th Cir. 2000) (quoting MM v. Zavaras, 139 F.3d 798, 800 (10th Cir. 1998)), and is not permitted without express court permission.

Of course, such permission will not be granted unless and until the party has made a formal request. Furthermore, even where "a court grants permission, it is often with the requirement that the real names of the plaintiffs be disclosed to the defense and the court but kept under seal thereafter." W.N.J. v. Yocom, 257 F.3d 1171, 1172 (10th Cir. 2001) (dismissing appeal on basis that "plaintiffs used pseudonyms without first obtaining permission from the district court") (citing Nat'l Commodity & Barter Ass'n, 886 F.2d at 1245).

Accordingly, because Plaintiff never petitioned the Court to proceed under an alias, his persistence in maintaining his false identity mandates dismissal of his case. MCI Worldcom Network Serv., Inc. v. Graphnet, Inc., 2005 WL 1116163, *6 (D.N.J. 2005) ("When determination of the correct party to bring the action was not difficult and when no excusable mistake was made . . . the action should be dismissed.") (citing 6A Wright & Miller, Federal Practice & Procedure § 1555); Dotson v. Bravo, 321 F.3d 663 (7th Cir. 2003) (dismissal with prejudice of an arrestee's § 1983 suit in part because plaintiff filed suit using a false name).[2]

**B.  Unconstitutional Retaliation Claim**

Plaintiff claims that the disciplinary charge for his

---

[2] Although Plaintiff's refusal to identify himself alone mandates dismissal, the Court will proceed to further grant Defendants summary judgment on the merits.

8

alleged threat to Lombardi was merely a conspiracy in retaliation for his refusal to speak with Lombardi during the interview.[3] However, Plaintiff has not asserted evidence such that a reasonable jury could find that either Lombardi or the State Defendants were acting in retaliation.

In the Third Circuit, "[a] prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)); see also Allah v. Al-Hafeez, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002).

If the prisoner successfully establishes a prima facie case, "the burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" Id. (citing Rauser, 241 F.3d at 334). In

---

[3] The State Defendants argue that Plaintiff failed to fill out an "Administrative Remedy Form" or otherwise exhaust his administrative remedies. However, because the Court now finds that Plaintiff failed to provide any evidence of retaliation, the Court will not reach the question of administrative remedies with regard to Plaintiff's retaliation claim.

the context of a prison, "courts should afford deference to decisions made by prison officials, who possess the necessary expertise." Rauser, 241 F.3d at 334 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Plaintiff claims that his refusal to speak to Lombardi was constitutionally protected under the Fifth Amendment and that the disciplinary charge and resulting sanction was an adverse action. Plaintiff also alleges that Lombardi "disclosed plaintiff's entire immigration records to prison officials as another retaliatory act." (Pl.'s Opp. at 25.)

However, even if Plaintiff has satisfied the first two prongs of the retaliation case, Plaintiff has entirely failed to provide evidence suggesting that his refusal to speak "was a substantial or motivating factor" in Lombardi's decision to report the threat. Nor is there any indication of a retaliatory motive in the prison's disciplinary response to Lombardi's report. Aside from the temporal proximity of Plaintiff's refusal to speak and Lombardi's report to prison officials, there is no evidence whatsoever that Lombardi made the report for any reason other than a sincere belief that he was threatened. (Lombardi Decl. ¶ 10.) It is equally clear that Lombardi had intended to leave the INS documentation of Plaintiff's illegal status with the prison from the outset of the interview. (Lombardi Decl. ¶ 11.)

10

While Plaintiff has failed to "provide more than a mere scintilla of evidence that there is a causal relationship between his protected activity and his misconduct charges," Allah v. Al-Hafeez, 208 F. Supp. 2d 520, 536 (E.D.Pa. 2002), Defendants have marshaled evidence to the contrary. Given that Lombardi had already initiated deportation procedures prior to his interview with Plaintiff, that the visit was for the primary purpose of providing Plaintiff an opportunity to dispute the deportation, and that Lombardi's experience was that "many inmates invoke their right to remain silent during interviews," the evidence suggests that Lombardi had no motive to retaliate against Plaintiff for refusing to speak. (Lombardi Decl. ¶ 6-7.)

Moreover, even if Plaintiff could establish a causal relationship between Plaintiff's refusal to speak to Lombardi and Lombardi's decision to report the threat, a preponderance of the evidence indicates that Lombardi would have reported the incident regardless of Plaintiff's invocation of his right to silence. (Lombardi Decl. ¶ 14.) There is no indication that Defendants deviated in any way from their standard response to a perceived threat by a prisoner. While there may be a disputed question of fact whether Plaintiff intended his action to be understood as a threat, Plaintiff has not refuted Lombardi's claim that he truly believed he was threatened and that he would have reported any such perceived threat to prison officials regardless of

11

Plaintiff's behavior during the interview. (Lombardi Decl. ¶ 14.) Nor has Plaintiff provided any reason to doubt that the prison officials' would have acted no differently absent Plaintiff's protected conduct.

Accordingly, Defendants are entitled to summary judgment for lack of any evidence of a causal connection between Plaintiff's protected activity and the adverse disciplinary action, and because all evidence indicates that Defendants responded as they would have regardless of Plaintiff's protected activities.

## C.   Conspiracy

To establish a conspiracy claim, Plaintiff must make "specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." Fioriglio v. City of Atlantic City, 996 F. Supp. 379, 385 (D.N.J. 1998) (citing Darr v. Wolfe, 767 F.2d 79, 80 (3d Cir. 1985); Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)).

Plaintiff has provided no such "specific factual allegations" to support his conclusory statements that Lombardi "conspired" with Achinko and Philips to file a "false disciplinary charge."(Pl.'s Opp. at 10). Furthermore, under the facts, the absence of retaliation undermines any claim of a

12

conspiracy to retaliate, since the individual must intend to retaliate in order to so conspire. See e.g., Fioriglio, 996 F. Supp. at 385 ("[A] § 1983 conspiracy claim is not actionable without an actual violation of § 1983.") (quoting PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 832 n. 23 (D.N.J. 1993)). Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of conspiracy.

**D.    Due Process**

Plaintiff further alleges that the disciplinary hearing deprived him of due process. Defendants argue that this is an attack on a final decision of a state agency and therefore improperly before this court since New Jersey Court Rule 2:2-3(a)(2) authorizes appeals of agency decisions to the Appellate Division of the New Jersey Superior Court. Defendants argue also that Plaintiff was provided with all the constitutionally-mandated process to which he was entitled.

The Third Circuit has noted that an appeal to the Superior Court of New Jersey, Appellate Division, is not necessary to exhaust administrative remedies, as there exists "a well-established distinction between administrative and judicial remedies." Jenkins v. Morton, 148 F.3d 257, 259 (3d Cir. 1998) (holding that Congress did not intend to "include appeals to the state judicial system within the administrative remedies which a prisoner must exhaust before bringing an action described in

13

section 1997e(a)"). Consequently, Plaintiff's failure to appeal to the Appellate Division was not a failure to exhaust administrative remedies.

Defendants are nevertheless entitled to summary judgment on the grounds that Plaintiff's hearing was conducted in accordance with due process requirements. It is well established that "the due-process rights of convicted persons serving time behind bars are not the same as those for persons merely charged with a crime." McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995) ("It must be remembered that prisons and correctional institutions are not quiet monasteries. Their security and order are peculiarly dependent upon a system of swift, stern, unmistakable and yet fair disciplinary justice."). To satisfy due process in a disciplinary proceeding against a prisoner, prison officials must provide:

> (1) a written notice of the alleged violation; (2) a written statement of the evidence relied on and the reasons for the disciplinary action taken; (3) a right to call witnesses and a right to present documentary evidence, when doing so would not be unduly hazardous to institutional safety or correctional goals; and (4) a right to assistance from a counsel substitute where the inmate is illiterate or the issues too complex for the inmate to marshal an adequate defense.

Id. at 194-95 (citing Wolff v. McDonnell, 418 U.S. 539, 563-70 (1974)).

Defendants argue that all of these requirements were met, and Plaintiff provides no evidence or allegation to the contrary.

14

Plaintiff's hearing was conducted by an impartial tribunal: Officer Zane Maguire, a hearing officer employed by Department of Corrections Central Office. Although Plaintiff claims he did not receive twenty-four hour notice of the charge against him prior to the hearing and that the notice did not state the substance of the offense, the hearing was adjourned to give him an opportunity to prepare a defense. Plaintiff received his charges on February 15, 2002, and the hearing did not take place until February 27, 2002. Additionally, Plaintiff was assigned an inmate paralegal to assist him with his defense, submitted to the hearing officer a comprehensive statement of his version of the incident, and had an opportunity to pose questions to Agent Lombardi through interrogatories. This Court fails to see how this procedure violated Plaintiff's right to due process.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claim.

The accompanying Order shall issue today.

Dated:   12/20/05            S/ Robert B. Kugler
                             ROBERT B. KUGLER
                             United States District Judge